**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

RICHARD PAUL SMITH, individually,
and on behalf of others similarly
situated,

      Plaintiff,

v.                                                            **CLASS ACTION**

VERRA MOBILITY CORPORATION;
THE SCHOOL BOARD OF POLK
COUNTY, FLORIDA; and THE POLK
COUNTY SHERIFF'S OFFICE;

      Defendants.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD PAUL SMITH ("Plaintiff"), individually, and on behalf of all others similarly situated, hereby files suit against Defendants, VERRA MOBILITY CORPORATION ("Verra"); THE SCHOOL BOARD OF POLK COUNTY, FLORIDA ("School Board"); and THE POLK COUNTY SHERIFF'S OFFICE (the "Sheriff's Office," and collectively with Verra and the School Board, "Defendants"). In support, Plaintiff alleges as follows:

### INTRODUCTION

1.    Defendants launched a school-bus "safety" camera scheme that has already generated more than 11,400 citations in Polk County, generating more

than $1.3 million in civil penalties—a large-scale revenue generator masquerading as a public safety initiative.

2.      Each Notice of Violation ("NOV") issued under this program demands a $225.00 penalty and is formatted to resemble an official traffic citation. The NOV prominently warns, in red font, that failure to respond will result in the issuance of a Uniform Traffic Citation ("UTC"), at which point the financial consequences escalate to $329.00, with the added risk of further penalties, court costs, and potential license suspension. However, the NOV fails to clearly inform recipients that they cannot contest liability at the NOV stage. Rather, the NOV omits that fact that the only way contest liability is to allow the NOV to lapse—thereby triggering increased penalties and greater legal risk—in order to exercise their right to be heard. Nowhere in the NOV does it state the process to contest liability.

3.      The actual process is flawed and unlawful. Drivers should be able to challenge an NOV without facing the risk of UTC penalties. Drivers are not provided with a meaningful opportunity to be heard before facing increased penalties. Instead, they are forced to either preemptively pay the $225.00 or wait for the UTC to be issued—with no clearly presented, risk-free mechanism to contest the initial notice. The NOV also warns that payment constitutes an admission of guilt, further discouraging recipients from exercising any challenge.

This "pay-or-penalize" structure coerces compliance, chills the exercise of due process rights, and enables Defendants to extract civil penalties under constitutionally deficient procedures for their own financial benefit. Verra facilitates this process through its online platform, www.violationinfo.com, which serves as the exclusive online portal for viewing purported evidence and paying fines. The site is prominently referenced in the NOVs and purports to offer convenient services, but reinforces the perception that payment is the only safe or practical option—thereby enabling Verra to profit from the coercive collection of penalties that recipients may not lawfully owe.

## PARTIES, JURISDICTION, AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the U.S. Constitution and 42 U.S.C. § 1983.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district.

_Class Representative Plaintiff_

6.      At all relevant times, Plaintiff, Richard Paul Smith, is a resident of Hickory Hills, Illinois.

*Defendants*

7.     Defendant Verra Mobility Corporation, f/k/a American Traffic Solutions, Inc., is a Delaware corporation with a principal place of business in Mesa, Arizona. Verra entered into a contract with the School Board to install and operate a school bus camera system purportedly tasked with enforcing Section 316.172, Florida Statutes (the "CrossingGuard System"). This Court has personal jurisdiction over Verra pursuant to sections 48.193(1)(a)(1) and (1)(a)(6), Florida Statutes, as during all times relevant to this lawsuit, Verra: (i) was operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, and (ii) caused injury to persons or property within this state arising out of an act or omission by the defendant outside of this state, if, at or about the time of injury, the defendant was engaged in solicitation or service activities within this state.

8.     Defendant School Board of Polk County, Florida, is responsible for the administration of educational services and operations within Polk County, including transportation services.

9.     Defendant Polk County Sheriff's Office is a municipal entity existing under the laws of the State of Florida, which, at all times relevant to this action, was responsible for the enforcement of traffic laws in Polk County, Florida.

4

10.     All conditions precedent to the filing of this class action Complaint have been met or waived.

## FACTUAL ALLEGATIONS

### Legislative and Statutory History for School Bus Camera Program

11.     Section 316.172(1)(a), Florida Statutes, makes it unlawful for motorists to pass a school bus that displays a stop signal until said signal is withdrawn.

12.     Section 316.173, Florida Statutes, permits a school district to contract with a private vendor or manufacturer to install a school bus infraction detection system on any school bus within its fleet, whether owned, contracted, or leased, and for services including, but not limited to, the installation, operation, and maintenance of the system, for the sole purpose of improving public safety.

13.     Unlike other statutes governing automated traffic law enforcement, Section 316.173 lacked any substantive procedures to ensure that municipalities protect the constitutional due process rights of motorists who are cited under it.

14.     For example, Florida's red light camera statute requires municipalities to, among other things, "designate by resolution existing staff to serve as the clerk to the local hearing officer," schedule hearings before a "local hearing officer" by U.S. Mail, require a "local hearing officer [to] review the photographic or electronic images or the streaming video," and "determine whether a violation under this section has occurred, in which case the hearing

officer shall uphold or dismiss the violation," and further stipulates that although the "[f]ormal rules of evidence do not apply . . . due process shall be observed and govern the proceedings."[1]

15.     The legislative history of Section 316.173 demonstrates that the Florida legislature initially identified the need for similar due process protections in connection with programs such as the CrossingGuard System; however, those protections were stricken before the law was enacted.

16.     Specifically, although the original draft of the proposed HB 741 anticipated "judicial or administrative proceedings," that language was stricken in subsequent amendments, and the substituted bill SB 766 included no such language.[2]

17.     Moreover, SB 994, filed on December 19, 2023, initially identified the need for due process protections in connection with the issuance of NOVs pursuant to Section 316.173, and required the designation of a "local hearing officer" to "conduct hearings related to a notice of violation issued pursuant to s. 316.173," and further specified the qualifications for such a local hearing officer.[3]

---

[1] § 316.0083(5), Fla. Stat. (2024).

[2] H.R. 741, 2023 Leg. (Fla. 2023), *available at* https://www.flsenate.gov/Session/Bill/2023/741/BillText/Filed/PDF.

[3] H.R. 994, 2024 Leg. (Fla. 2024), *available at* https://www.flsenate.gov/Session/Bill/2024/994/BillText/Filed/PDF.

18.    However, the text of SB 994 was amended substantially in a subsequent iteration posted on February 15, 2024, which eliminated the due process protections afforded by the designation of a local hearing officer.[4]

19.    As a result of the Florida Legislature's elimination of procedural due process protections in the language of the proposed bills, Section 316.173 lacked any substantive procedural due process protections for cited motorists, until recently.[5]

20.    Defendants not only failed to provide adequate procedures but affirmatively exploited the statutory gap.

21.    The scheme was precisely structured to profit because no neutral, cost-free, and timely hearing mechanism was guaranteed at the pre-penalty stage, enabling Defendants to coerce payments from drivers under threat of escalating penalties and license suspension.

---

[4] *Compare* Fla. S., CS/CS/S.B. 994, C-2 (Feb. 15, 2024), *available at* https://www.flsenate.gov/Session/Bill/2024/994/BillText/c2/PDF, *with* Fla. S. Comm. Sub. for S.B. 994, C-1 (2024), *available at* https://www.flsenate.gov/Session/Bill/2024/994/BillText/c1/PDF.

[5] Under Chapter 2025-149, S.B. 462, Section 316.173 was amended to include subsection (6), which requires the school district to appoint a local hearing officer to conduct hearings on contested NOVs. 2025 Bill Text FL S.B. 462. Orders are appealable under section 162.11, Florida Statutes.

**Implementation of the School Bus Camera Program in Polk County**

22.    On or about April 2, 2024, Defendants Verra and the School Board entered into a Photo Enforcement Service Agreement ("Service Agreement"), authorizing the enforcement of school bus stop signal violations and allowing for revenue generation from citations issued through the CrossingGuard System.

23.    On or about July 2, 2024, the School Board entered into an Intergovernmental Agreement, pursuant to which the Sheriff's Office agreed to provide law enforcement resources necessary to administer traffic enforcement and violation assessment for the CrossingGuard System, and to "prosecute violations."

24.    Pursuant to the Service Agreement, Verra: (i) acts under the color of Florida law, by performing the traditionally public function of enforcing Florida traffic statutes; and (ii) has a close relationship with the School Board and the Sheriff's Office, which involves ongoing bilateral communications, the installation of equipment on vehicles owned and operated by the School Board, cooperative decision making including which bus routes are monitored, the training of bus drivers and law enforcement, and revenue sharing.

25.    The CrossingGuard System works by activating cameras installed on school buses when the stop lights are activated and recording the license plate of vehicles passing in the opposite direction using video and still photographs.

26.     Verra purportedly sends video and pictures of passing vehicles to be evaluated by "a qualified deputy or other qualified staff member" designated by the Sheriff, in accordance with the Sheriff's responsibilities to administer the Program.

27.     The Sheriff's office purportedly reviews the recorded images after the transmission of data indicating a potential traffic violation to determine whether an infraction occurred.

28.     An NOV is then sent to the registered owner of the vehicle in the video and still photograph.

29.     Verra operates a website at www.violationinfo.com, which is referenced directly on the NOV and functions as the exclusive online portal through which motorists are directed to view video evidence, pay penalties, or access FAQs. The platform presents itself as an informational site but serves as a core mechanism for collecting civil penalties on behalf of Verra and its governmental partners. Verra's design and control of this platform constitute an offer of commercial services, including online payment processing and citation resolution, thereby bringing its conduct within the scope of trade or commerce.

30.     To date, the CrossingGuard System, managed by Verra, has issued over 11,400 NOVs to drivers in Polk County, Florida, generating an estimated $1.3 million in receivable civil penalty revenue.

31.     Each purported violation of Florida law enforced through the CrossingGuard System results in a fine (the "Civil Penalty"). § 318.18, Fla. Stat.

32.     The CrossingGuard System provided incentives for Verra to target as many motorists as possible. Verra installed cameras on approximately 510 school buses operated by the School Board at no upfront cost, with compensation drawn from citation revenue.

33.     Initially, Verra was entitled to payment of $200.00 per bus per month, plus a $49.00 fee per issued event package sent to law enforcement, a payment scheme that motivated Verra to issue as many NOVs as possible and violated Florida law. This structure was later changed.

34.     For the 2024-2025 school year, Verra and the School Board amended their agreement to reflect that Verra is entitled to 60% of the program revenue, the School Board is entitled to 30%, and the Sheriff's Office is entitled to the remaining approximately 10%, billed to the School Board at an hourly rate of $84.34 for time spent reviewing violation footage and issuing citations.[6] This structure continues to incentivize Defendants to issue as many NOVs as possible, regardless of the accuracy or fairness of the violation determinations.

---

[6] See Katie LaGrone, '100% It's a Money Grab': Florida School Bus Cameras Generate Millions for School Districts, ABC Action News (Feb. 14, 2025), https://www.abcactionnews.com/news/florida-investigative-team/100-its-a-money-grab-florida-school-bus-cameras-generate-millions-for-schools-districts.

35.    Many drivers, including Plaintiff and the putative Class Members, received NOVs despite their belief that they operated their vehicle in compliance with Florida traffic laws.

36.    Plaintiff and the putative Class Members received an NOV by U.S. Mail, which demanded the payment of a civil penalty of $225.00. NOVs also include the statement of a law enforcement officer, complete with the police officer's signature and identification number, statutory language, and a deadline to pay.

37.    According to Verra, "[i]f the owner of the vehicle does not pay the statutory penalty, request a hearing, or submit an affidavit by the due date listed on the Notice of Violation, a Uniform Traffic Citation will be issued."[7]

**Question 4. What is the amount of the fine? Is there a late fee?**

The owner of a motor vehicle is liable for payment of a statutory penalty of $225.00 for the Notice of Violation. There are no points assessed for this Notice of Violation. If the owner of the vehicle does not pay the statutory penalty, request a hearing, or submit an affidavit by the due date listed on the Notice of Violation, a Uniform Traffic Citation will be issued.

38.    However, the NOVs issued through the CrossingGuard System only inform recipients that failure to either pay the $225.00 penalty or submit an affidavit by the stated deadline will result in the issuance of a UTC. The NOV fails to disclose that contesting liability is not possible at the NOV stage. The back of the NOV then states that, upon issuance of a UTC, the recipient may either: (1) pay

---

[7]*See* FREQUENTLY ASKED QUESTIONS, School Bus Safety Enforcement Program, https://www.violationinfo.com/MoreInformations.aspx?c=404.

the $329.00 civil penalty; (2) submit an affidavit; or (3) request a hearing before a designated official who will determine whether an infraction occurred.

39.     The NOV further states that if the official finds no infraction, the UTC will be dismissed without cost. However, if the official finds a violation occurred, they may uphold the UTC and impose an additional civil penalty of up to $500.00, along with court costs and fees. Moreover, failure to take action on the UTC—by paying, submitting an affidavit, or requesting a hearing—may result in the suspension of driving privileges.

40.     While this language appears to outline post-UTC remedies, the NOV fails to clearly or prominently inform recipients that no hearing or contestation opportunity exists prior to the UTC stage. The only reference to a hearing is placed on the reverse side of the document, subordinate to bold warnings about escalating penalties and suspension, and fails to identify the decisionmaker as impartial. The overall structure creates the impression that contestation is delayed, complicated, and potentially more costly—discouraging individuals from pursuing it.

41.     In other words, the NOV does not disclose that the only way to obtain a hearing is to decline payment and affirmatively allow the NOV to lapse into a UTC—thereby exposing the recipient to greater penalties and legal risk.

42.     Courts have recognized that due process is violated where citation schemes, by their structure and content, effectively coerce payment under threat of escalating financial and administrative penalties. Here, a reasonable person receiving the NOV would perceive immediate payment as the only safe and efficient path—despite the existence of formal remedies—thus being deprived of a meaningful opportunity to be heard before property is taken.

43.     This deliberate coercive framework is structured to ensure that recipients of an NOV simply pay the Civil Penalty rather than risk additional costs, court involvement, or license suspension, even when they may not be liable.

44.     Despite numerous complaints and media coverage highlighting these issues, Defendants have made no substantial efforts to rectify the program or facilitate a fair contestation process. Although the program has reportedly been suspended in Polk County, no meaningful remedial action has been taken to address the harm inflicted on those previously cited and penalized.

45.     In May 2025, the Florida Legislature enacted new legislation to finally provide a hearing mechanism for § 316.173 violations—the very safeguard Plaintiffs contend was previously missing. However, the new law only applies prospectively, providing no remedy for individuals fined under the earlier version of the statute. As a result, thousands of individuals cited under the CrossingGuard System paid the fines not because they were liable, but to avoid the risk and

confusion associated with contestation—a process that was not clearly explained, timely available, or easily navigable.

46.    Defendants unjustly profited from these coerced payments, which were collected under a procedurally deficient system. The scheme has imposed unjust financial burdens on Polk County drivers without affording them the constitutional due process protections guaranteed under law.

47.    The CrossingGuard System created a direct monetary incentive for Defendants to deprive Polk County drivers of an opportunity to be heard by paying Verra, the School Board, and the Sheriff's Office each a substantial portion of the revenue derived from Civil Penalties in connection with NOVs issued to motorists.

<strong><u>CLASS REPRESENTATIVE FACTUAL ALLEGATIONS</u></strong>

<u>*Richard Paul Smith*</u>

48.    On January 29, 2025, a vehicle registered to Mr. Smith was traveling on a road in Winter Haven, a city located in Polk County, Florida.

49.    At 8:48 A.M., a school bus equipped with the CrossingGuard System photographed Mr. Smith's vehicle.

50.    On February 7, 2025, an NOV (#5622500015298) (the "Notice") was issued to Mr. Smith, alleging that his vehicle was operated in violation of Florida traffic laws, imposing a $225.00 Civil Penalty.

51.    Mr. Smith believed that the Notice issued to him on February 7, 2025 was improper.

52.    Mr. Smith declined to pay the Civil Penalty, and on April 28, 2025, a UTC was issued, imposing a $329.00 fine. Mr. Smith timely pled not guilty to the UTC and requested a hearing.

53.    Following a hearing, Mr. Smith was found guilty. The court withheld adjudication and assessed a $198.00 fine, a $7.00 additional fine, and $131.00 in court costs. Mr. Smith timely paid a total of $336.00.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this lawsuit pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all other persons similarly situated.

55.    The proposed class (the "Class") is defined as follows:

All persons who received a NOV through the CrossingGuard System between April 2, 2024 and the present and paid the associated civil penalty.

56.    Excluded from each class are the Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

57.    The identities of the Class Members are readily ascertainable, using objective criteria from Defendants' own records, including citation, payment, and contestation data.

58.    Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed class following the discovery period and before the Court determines whether class certification is appropriate.

59.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

## Rule 23(a) Requirements

*Numerosity*

60.    The Class satisfies the numerosity requirement of Rule 23(a)(1) because, upon information and belief, this class consists of at least thousands of individuals who received NOVs through the CrossingGuard System and paid the associated civil penalty. Joinder of all such individuals is impracticable. The identities of Class Members are readily ascertainable through Defendants' payment and citation records, which the School Board is required to maintain under Florida law.

*Commonality*

61.    The proposed Class satisfies the requirements of Rule 23(a)(2) because there are questions of law and fact common to all Class Members, including:

a.  Common Legal Questions

i.   Whether Defendants' failure to provide an adequate contestation process violates the procedural due process rights of Plaintiff and the putative Class Members.

ii.  Whether Verra's conduct violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

iii. Whether declaratory relief is appropriate to remedy the systemic denial of due process in the administration of the CrossingGuard System.

b.  Common Factual Questions

i.   Whether Defendants provided any meaningful opportunity to be heard before escalating penalties or issuing a UTC.

ii.  Whether the NOV provides adequate notice of the process to contest liability;

iii. Whether the NOVs were uniformly structured and presented in a way that emphasized penalties over procedural rights, and whether this design was consistent across all recipients.

*Typicality*

62.    Plaintiff satisfies the typicality requirement of Rule 23(a)(3). Plaintiff received an NOV through the CrossingGuard System and was not afforded adequate due process protection to contest liability prior to the imposition of escalating penalties. His claims—procedural due process, FDUTPA, and unjust

enrichment—arise from the same course of conduct and seek the same relief as the Class.

*Adequacy of Representation*

63. Plaintiff will fairly and adequately protect the interests of the Class, as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of the Class Members and seeks relief for the same injuries arising from the same alleged conduct. Plaintiff is committed to vigorously prosecuting this action on behalf of the Class, and has retained counsel experienced in complex civil and class action litigation, including successfully certifying classes in similar matters. Plaintiff and his counsel are prepared to devote the resources necessary to represent the Class and to manage this litigation efficiently. The interests of Plaintiff and the Class are aligned in seeking declaratory and substantive relief to remedy the alleged unlawful practices of Defendants.

64. Plaintiff anticipates providing appropriate notice to the certified Class in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification or pursuant to court order under Fed. R. Civ. P. 23(d).

## Rule 23 (b) Requirements

*Rule 23(b)(3) –Predominance and Superiority*

65.    Certification of the Class is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any individual questions, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

66.    Common issues predominate, including whether Defendants failed to provide adequate procedural protections prior to imposing escalating financial consequences through the issuance of NOVs and UTCs, and whether they were unjustly enriched by retaining funds collected under an unconstitutional or procedurally deficient enforcement system. The resolution of these questions will determine liability on a class-wide basis, and will not turn on the specific merits of individual violations. Additional common questions include whether Verra engaged in deceptive or unfair trade practices in its administration of the CrossingGuard System, which can be resolved on a class-wide basis based on the uniform structure and content of the NOVs and the centralized online payment platform.

67.    A class action is the superior method for adjudicating these claims because individual Class Members have limited economic incentive to pursue separate claims, and individual actions would burden the courts and risk

inconsistent outcomes. Class litigation offers a centralized, efficient forum for resolving these uniform legal issues and better conserves the resources of both the judiciary and the parties.

68.    Adjudication of the merits of each individual Notice is unnecessary. Plaintiff does not seek to challenge whether each traffic violation occurred, but rather whether the procedures preceding the imposition and collection of civil penalties complied with constitutional due process requirements. Similarly, the FDUTPA claim does not depend on the validity of each underlying violation, but on Verra's common conduct across the class.

69.    Plaintiff is unaware of any difficulties likely to be encountered in managing this action as a class action. Rule 23(c)(4) may be used to certify particular issues for class-wide adjudication, and Rule 23(c)(5) may be used to divide the Class into subclasses if necessary to enhance clarity and manageability.

*Rule 23(b)(2) – Declaratory Relief*

70.     Certification of the Class is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, thereby making final declaratory relief appropriate with respect to the Class as a whole. Specifically, Defendants administered the CrossingGuard System in a manner that failed to provide clear, timely, and risk-free opportunities to contest liability prior to escalating penalties, in violation of procedural due process rights under the U.S. and Florida Constitutions.

71.     Plaintiff seeks declaratory relief applicable to the entire Class, including a judgment that Defendants' conduct and the enforcement process under the CrossingGuard System are unconstitutional as administered. This relief will benefit all members of the Class equally by confirming their rights under the law and preventing continued enforcement under an unlawful system.

72.     Adjudication of the merits of each individual Notice issued through the CrossingGuard System is unnecessary for this Class. The claim is based on a uniform enforcement structure that allegedly denied due process to all individuals subjected to the NOV and UTC process, who attempted to contest liability, regardless of the outcome or specifics of the individual violations.

## CAUSES OF ACTION

### COUNT I
### Violation of 42 U.S.C. § 1983
**(against Verra, the School Board, and the Sheriff's Office)**

73.     Plaintiff re-alleges and reaffirms herein all of the allegations contained in paragraphs 1 through 72.

74.     Plaintiff brings this cause of action on behalf of himself and similarly situated Class Members.

75.     Plaintiff and the Class Members are registered vehicle owners of vehicles operated in Polk County, Florida.

76.     Plaintiff and the Class Members possess constitutionally protected property interests in their money and driving privileges. Defendants threatened deprivation of these interests through a process that failed to provide adequate notice or a meaningful opportunity to be heard before penalties escalated.

77.     At all relevant times, Verra was contracted by the School Board to install and operate automated traffic enforcement systems aimed at detecting traffic violations around school buses.

78.     Verra, the School Board, and the Sheriff's Office undertook the challenged conduct pursuant to express contractual provisions regarding the enforcement of traffic laws and the issuance of fines.

79.     Verra, operating under color of law through its contractual and agency relationship with the Sheriff and School Board, issued NOVs that did not afford recipients a clearly stated, timely, or risk-free method to contest liability before penalties increased including escalation to a UTC.

80.     Defendants concede that a NOV cannot be directly contested.

81.     Defendants acknowledge that the only way to contest a Notice of Violation is to decline payment and allow it to lapse into a UTC. Only once the NOV converts into a UTC may the vehicle owner contest liability in court. This requirement is not clearly disclosed on the face of the NOV, thereby obscuring the fact that motorists are denied any opportunity to challenge liability at the NOV stage.

82.     The NOV process was structured to coerce payment by warning that failure to pay or submit an affidavit by the stated deadline would result in a UTC carrying a higher base penalty, potential court costs, and risk of license suspension. Although the reverse side of the NOV outlines certain rights, this information is not prominently presented and is overshadowed by warnings of escalating consequences. The NOV fails to provide a clear, immediate, or accessible mechanism to contest liability before triggering harsher enforcement.

83.     The NOV fails to adequately communicate that recipients may contest liability through a neutral decision-maker without financial risk if they prevail, or

to make that opportunity accessible at the NOV stage. Instead, the focus is on escalation, financial penalties, and administrative sanctions, not on a fair opportunity to be heard.

84.    This design foreclosed the ability for Plaintiff and the Class Members to exercise the right to contest liability from the outset, thereby depriving them of procedural due process.

85.    The actions of Verra, the School Board, and the Sheriff's Office violated clearly established constitutional rights—specifically, the right to procedural due process under the Fourteenth Amendment.

86.    The NOVs did not provide for a neutral arbiter at the pre-penalty stage, nor did they make clear that contestation could occur before additional penalties were imposed. The process required individuals to risk further financial harm or waive their rights entirely.

87.    The procedures provided were neither meaningfully accessible, timely, nor presented in a way that could be reasonably understood by the average recipient as a genuine avenue for redress.

88.    Given the conduct described above, Plaintiff's and the Class Members' procedural due process rights—specifically, their Fourteenth Amendment rights not to have their property taken or threatened without lawful

procedures—were violated by Verra, the School Board, and the Sheriff's Office, all acting under the color of state law.

89.     Plaintiff's and the Class Members' rights to procedural due process—including, but not limited to, sufficient notice, the right to an impartial arbiter, and the right to present evidence—were violated by Verra, which acted under the color of state law as authorized by its contractual relationship with the School Board and Sheriff.

90.     As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, Plaintiff and the Class Members have suffered injuries and damages.

<u>COUNT II</u>
<u>Violations of the Fourteenth Amendment and the Florida Constitution</u>
(against Verra, the School Board, and the Sheriff's Office)

91.     Plaintiff re-alleges and reaffirms herein all of the allegations contained in paragraphs 1 through 72.

92.     Plaintiff brings this cause of action on behalf of themselves and the Class Members in the Class.

93.     Both the Fourteenth Amendment and article 1, section 9 of the Florida Constitution prohibit state actors from depriving an individual of liberty without due process of law. This includes the right to adequate notice and a meaningful opportunity to be heard before the government imposes a penalty or deprives an individual of protected interests.

94.     All Defendants are state actors for purposes of this claim. The School Board and Sheriff's Office are governmental entities. Verra acted under color of state law by performing public enforcement functions, pursuant to contracts and intergovernmental agreements, including issuing NOVs and processing data used for enforcement actions.

95.     Plaintiff and the Class Members possess constitutionally protected property interests in their money and driving privilege.

96.     The $225.00 civil penalty imposed through the NOV process is substantial, and it was levied through a procedure that emphasized financial consequences and license suspension over any clear or accessible path to contest liability.

97.     Although the statute provides for certain remedies once a UTC is issued—including the ability to submit an affidavit, pay an enhanced fine, or request a hearing—those remedies only become available after a delay, and only after the recipient fails to respond to the NOV, by which time penalties escalate and procedural risk increases.

98.     The NOV process did not itself provide a hearing or impartial adjudication before threatening escalation to more serious financial consequences or license suspension. Nor did it clearly or prominently inform recipients that a timely, neutral, and risk-free contestation process existed or was available.

99.    As a result, Plaintiff and the Class Members were denied a fair and timely opportunity to challenge the alleged infraction before being subjected to increased penalties and coercive enforcement mechanism.

100.    Defendants' actions thus deprived Plaintiff and the Class Members of procedural due process under both the federal and Florida constitutions.

101.    As a direct and proximate result of Defendants' violations, Plaintiff and the Class Members have suffered injuries and damages, including improper financial penalties and threatened deprivation of driving privileges without constitutionally sufficient process.

**COUNT III**
**Unjust Enrichment**
**(against Verra, the School Board, and the Sheriff's Office)**

102.    Plaintiff re-alleges and reaffirms herein all of the allegations contained in paragraphs 1 through 72.

103.    Plaintiff brings this cause of action on behalf of themselves and the Class Members from the Class.

104.    By the acts alleged herein, Defendants received a benefit in the form of civil penalty payments—or contractual rights to such payments—from Plaintiff and the Class Members, collected under a scheme that emphasized escalation and penalties while obscuring procedural safeguards.

105.    The retention of that benefit by Defendants is unjust, as it was obtained through a system that coerced payment by discouraging or deterring exercise of procedural rights, and failed to provide clear, accessible, or timely opportunities to contest liability before penalties accrued.

106.    By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and that the benefit be returned to Plaintiff and the Class Members.

<u>**COUNT IV**</u>
<u>**Declaratory Relief**</u>
**(Against Verra, the School Board, and the Sheriff's Office)**

107.    Plaintiff re-alleges and reaffirms herein all of the allegations contained in paragraphs 1 through 72.

108.    Plaintiff brings this cause of action on behalf of themselves and the Class Members in the Class and all other similarly situated individuals subject to the enforcement program challenged herein.

109.    An actual controversy exists between the parties regarding whether Defendants' enforcement scheme—which conditions the opportunity to contest liability on the escalation of penalties and obscures the procedural protections available—violates the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution.

110.    Plaintiff contends that this scheme is constitutionally deficient because it fails to provide a clear, timely, and risk-free opportunity to be heard before significant penalties accrue, and instead pressures vehicle owners to preemptively pay civil penalties under threat of a Uniform Traffic Citation, heightened fines, court costs, and license suspension.

111.    Plaintiff seeks a judicial declaration that the design and implementation of the NOV process, including its emphasis on coercive escalation and lack of clearly presented procedural safeguards, violates procedural due process.

112.    Plaintiff further seeks a declaration that Defendants are not legally entitled to retain civil penalties collected under this constitutionally deficient and coercively structured scheme.

113.    This controversy is ongoing and affects a broad class of individuals who continue to face exposure to the same enforcement practices absent judicial intervention.

114.    Plaintiff and the Class Members are entitled to declaratory relief under 28 U.S.C. § 2201 and section 86.011, Florida Statutes, and respectfully request that the Court declare that Defendants' enforcement program is unlawful in its current form and may not be continued without constitutionally adequate procedural protections.

## COUNT V
## Florida Unfair Deceptive and Unfair Trade Practices Act ("FDUTPA")
### (Against Verra)

115. Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 72.

116. FDUTPA prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204(1), Fla. Stat.

117. Verra's operation of their CrossingGuard System, as described above, constitutes an "unfair," "deceptive," and "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

118. Verra engaged in trade or commerce by offering services that included the design, implementation, and administration of a citation enforcement and payment system through which civil penalties were collected.

119. Verra's conduct constitutes an unfair, deceptive, and unconscionable practice in at least the following ways:

a. Verra caused NOVs to be issued in a format that closely resembled official traffic citations, obscuring its own private role in their issuance;

b. The NOVs warned of imminent escalation to a UTC, increased financial penalties, and license suspension, without disclosing that recipients had no opportunity to contest the NOV until after it escalated into a UTC;

c. The reverse side of the NOV provided only limited and obscure references to post-UTC procedures, failed to state that contestation was unavailable at the NOV stage, and framed payment as the only safe or timely response;

d. Verra maintained a centralized payment and information system (i.e., www.violationinfo.com), which it used to facilitate the collection of penalties and further reinforce the coercive payment process;

e. Verra directly profited from the volume of issued NOVs and had a financial incentive to design the system in a way that maximized the number of paid citations, including through misleading presentation and restricted access to contestation.

120. The structure and presentation of the CrossingGuard System, including the format and content of the NOVs and Verra's associated systems, would be material to a reasonable person and would likely affect a recipient's decision whether to pay or contest the citation.

121. As a result of Verra's unfair, deceptive, and unconscionable practices, Plaintiff and the Class Members have been aggrieved and have suffered, or will suffer, actual damages resulting from payments made in response to NOVs, UTCs, or as a direct consequence of those notices—including, in some cases, court-ordered fines that flowed from the initial, procedurally deficient enforcement process initiated by Verra.

122. These injuries could not be reasonably avoided by recipients, as the NOVs failed to clearly identify a risk-free and timely contestation mechanism and instead emphasized severe penalties and legal consequences.

123.    Plaintiff and Class Members were thus misled into paying penalties through a process that unfairly discouraged exercise of due process rights and concealed or minimized critical information about available remedies.

124.    As a direct and proximate result of Verra's unfair and deceptive practices, Plaintiff and the Class Members have suffered actual damages, including the payment of civil penalties they would not otherwise have paid.

125.    Plaintiff and the Class Members are entitled to declaratory and injunctive relief under section 501.211(1), Florida Statutes, including a judgment that Verra's conduct violated FDUTPA and a permanent injunction to prevent Verra from continuing to engage in these unlawful practices, including ceasing all efforts to assist in the collection of unpaid fines.

126.    Plaintiff and the Class Members also seek actual damages, costs, and reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes.

## DEMAND FOR JURY TRIAL

127.    Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## CONCLUSION

**WHEREFORE**, Plaintiff, Richard Paul Smith, individually and on behalf of all others similarly situated, demand:

a.  Certification of the proposed Class in paragraph 55;

b.  Appointment of the named Plaintiff as the representative of the Class;

c.  Appointment of the undersigned counsel as Class Counsel under Rule 23(g);

d.  A judgment declaring that Defendants' conduct, as alleged herein, violates 42 U.S.C. § 1983, the procedural due process guarantees of the U.S. Constitution and the Florida Constitution, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and constitutes unjust enrichment requiring full restitution and disgorgement of unlawfully obtained funds and paid to Defendants;

e.  A judgment rendering any and all NOVs and UTCs issued to Plaintiff and the Class Members under the CrossingGuard System void ab initio;

f.  An award to Plaintiff and the Class Members of any monies paid pursuant to the unlawful conduct set forth herein, pre- and post-judgment interest, statutory damages, compensatory damages, exemplary damages, and any other relief permitted under § 1983, FDUTPA, or common law;

g.  An order requiring Defendants to void any unpaid penalties or obligations issued under the challenged system and enjoining further enforcement absent constitutionally sufficient procedures; and

h.  An award of attorneys' fees, costs, and litigation expenses as allowed by law, including under 42 U.S.C. § 1988 and section 501.2105, Florida Statutes; and

i.  For such other and further relief as this Court deems just and equitable.

Date: August 27, 2025.                           Respectfully submitted,

**MORENO PERDOMO, PLLC**                          **ROBERT STRONGARONE, P.A.**
5000 S.W. 75th Avenue, Suite 400                  20134 SW 79th Court
Miami, FL 33155                                   Cutler Bay, FL 33189
Phone: 786-224-5093                               Phone: 786-543-3223

/s/ Gino Moreno                                   /s/ Robert Strongarone
Gino Moreno, FBN: 112099                          Robert Strongarone, FBN: 118931
gmoreno@morenoperdomo.com                         bob@robertstrongaronepa.com

/s/ Arlenys Perdomo
Arlenys Perdomo, FBN: 115561
aperdomo@morenoperdomo.com

                                                  *Counsel for Plaintiff and the Class*
                                                  *Members*