UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD PAUL SMITH,
individually and on behalf of
others similarly situated,

     Plaintiff,

v.

                                 Case No. 8:25-cv-2300-KKM-NHA

VERRA MOBILITY
CORPORATION et al.,

     Defendants.

_____

**ORDER**

Richard Smith filed this putative class action against Verra Mobility Corporation, the School Board of Polk County, Florida, and the Polk County Sheriff's Office, alleging that the defendants' automated school-bus traffic enforcement system violated his state and federal constitutional rights, unjustly enriched the defendants, and violated Florida's consumer protection laws. *See* Compl. (Doc. 1). On April 28, 2026, I dismissed all but Smith's claims for unjust enrichment against the School Board and Verra. *See* (Doc. 48). Both defendants move for reconsideration under Federal Rule of Civil Procedure 54(b). *See* School Bd. Mot. (Doc. 55); Verra Mot. (Doc. 57). The School Board requests that I dismiss the unjust enrichment claim against it as barred by

sovereign immunity, while Verra requests that I revise the order and decline to exercise supplemental jurisdiction over the remaining state-law unjust enrichment claims. For the below reasons, I grant Verra's motion but deny the School Board's motion.

## I.   BACKGROUND

Florida law prohibits motorists from passing a school bus once the school bus displays its stop signal. *See* Compl. ¶ 11 (citing § 316.172(1)(a), Fla. Stat.). To enforce Section 316.172, school districts are authorized "to contract with a private vendor or manufacturer to install a school bus infraction detection system on any school bus within its fleet . . . for the sole purpose of improving public safety." Compl. ¶ 12 (citing § 316.173, Fla. Stat.).

In April 2024, Verra Mobility Corporation entered into an agreement with the Polk County School Board "authorizing the enforcement of school bus stop signal violations and allowing for revenue generation from citations issued through the CrossingGuard System." Compl. ¶ 22. The system activates cameras installed on school buses when the stop lights are activated and records the license plates of passing vehicles. *Id.* ¶ 25. Verra sends the video to the Sheriff's Office, which reviews it to determine whether an infraction occurred. *Id.* ¶¶ 26–27. If so, a notice of violation (NOV) is sent to the vehicle's registered owner. *Id.* ¶ 28. Since the program's inception, the defendants "ha[ve] issued over 11,400 NOVs to drivers in Polk County, Florida, generating

an estimated $1.3 million in receivable civil penalty revenue." *Id.* ¶ 30. Verra receives 60% of the program revenue; the School Board receives 30%; and the Sheriff's Office receives the remaining 10%. *See id.* ¶ 34.

In February 2025, the Sheriff's Office issued Richard Smith an NOV alleging a violation of Section 316.172(1). *See* NOV (Doc. 33-1). Believing the NOV was improperly issued, Smith declined to pay the civil penalty and received a uniform traffic citation (UTC). *See* Compl. ¶¶ 51–52. Smith requested a hearing on the UTC, where he "was found guilty." *Id.* ¶ 53. The court "assessed a $198.00 fine, a $7.00 additional fine, and $131.00 in court costs," for a total of $336, which Smith timely paid. *Id.* ¶ 53.

Smith filed this putative class action on behalf of himself and "[a]ll persons who received a NOV through the CrossingGuard System between April 2, 2024 and the present and paid the associated civil penalty." Compl. ¶ 55. Smith alleged that the defendants violated his procedural due process rights by issuing an NOV that he could not contest without facing enhanced penalties. *See id.* ¶¶ 73–101 (Counts I and II). According to Smith's complaint, the federal constitutional claim supplied jurisdiction under 28 U.S.C. § 1331. *Id.* ¶ 4. Smith also brought claims against all three defendants for unjust enrichment, *id.* ¶¶ 102–06 (Count III) and declaratory relief, *id.* ¶¶ 107–14 (Count IV), and a violation against Verra only of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), *id.* ¶¶ 115–26 (Count V).

In April 2026, I dismissed Smith's constitutional, declaratory judgment, and FDUTPA claims against all three defendants. *See generally* Order. I also dismissed Smith's unjust enrichment claim against the Sheriff's Office, concluding that Florida did not waive its sovereign immunity for equitable claims. *See id.* at 29 (citing *Heine v. Fla. Atl. Univ. Bd. of Trs.*, 360 So. 3d 412, 420 (Fla. 4th DCA 2023)). Unlike the Sheriff's Office, the School Board did not assert sovereign immunity, and I thus declined to dismiss Smith's unjust enrichment claim against it on this basis. I also denied Verra's motion to dismiss Smith's unjust enrichment claim, determining that "Smith could yet prove Verra's conduct was inequitable under Florida law even if he failed to allege that Verra's conduct was unconstitutional." *Id.* at 34.

## II.    LEGAL STANDARDS

### A. Rule 54(b)

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." District courts should evaluate motions to reconsider non-final orders "under the standards inherent in Rule 54(b)—plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless USA, LLC*, 118

4

F.4th 1367, 1379–80 (11th Cir. 2024) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)).

"Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so. Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Id.* at 1380. Applying the law-of-the-case doctrine, "district courts should gently keep in mind the general point that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Thus, "a district court typically would not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashed arguments already considered and rejected." *Id.* at 1381. Likewise, "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request." *Id.*

### B. Rule 12(g)(2)

Subject to two exceptions, Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available

to the party but omitted from its earlier motion." *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) ("Furthermore, Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss."), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The first exception is that a party may raise the defenses of "failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim" in a pleading under Rule 7(a), by motion under Rule 12(c), or at trial. FED. R. CIV. P. 12(h)(2). The second exception is that subject-matter jurisdiction may be attacked at any time. FED. R. CIV. P. 12(h)(3).

## III.   ANALYSIS

The School Board and Verra seek reconsideration of the partial dismissal order on separate bases, one merits-based and one jurisdictional. I address each in turn, concluding that, although the School Board's motion is precluded by Rule 12(g)(2), all remaining state law claims over which I have supplemental jurisdiction—including the unjust enrichment against the School Board—should be dismissed.

### A. Sovereign Immunity

First, the School Board requests that I dismiss Smith's unjust enrichment claim as barred by Florida's state-law sovereign immunity, as I did

vis-à-vis the Sheriff's Office. *See* School Bd. Mot. at 3–4. Although the School Board never raised sovereign immunity as a defense to Smith's claims, *see* Order at 30 n.7, it seeks to do so now "[b]y this motion," School Bd. Mot. at 4. Smith resists dismissal, arguing that "the School Board had a full and fair opportunity to raise sovereign immunity in its original motion to dismiss but elected not to do so." Resp. to School Bd. Mot. (Doc. 59) at 2.

I agree with Smith that the School Board should have raised this defense in its first motion to dismiss and cannot do so now under the guise of a motion to reconsider a defense it never raised. Under Federal Rule of Civil Procedure 12(g)(2), "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." The School Board cannot skirt this limitation by moving under Rule 54(b), as motions for reconsideration also should not be used to raise arguments that could have been previously raised. *Cf. Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam).

To be sure, Rule 12(g)(2) does not prevent a litigant from challenging the Court's subject matter jurisdiction in a subsequent motion, or at any time. *See* FED. R. CIV. P. 12(h)(3). And some Florida and federal courts posit that, "like subject matter jurisdiction," Florida's state-law sovereign immunity "can be raised at any time." *City of Miami v. Robinson*, 364 So. 3d 1087, 1091 (Fla. 3d DCA 2023); *Johnson v. Fla. Dep't of Juv. Just.*, No. 8:24-CV-2195-WFJ-NHA,

2025 WL 638613, at *3 (M.D. Fla. Feb. 27, 2025) (rejecting a Rule 12(g)(2) objection and explaining that "[a]lthough the [state entity] did not raise its sovereign immunity argument in its second motion to dismiss, the Court considers it now because it is jurisdictional in nature"). But for purposes of the federal rules, Florida's "state-law immunity from suit" is not jurisdictional because "[a] defense rooted in state law cannot define the jurisdiction of the federal courts, which derives from the Constitution and acts of Congress."[1] *Green v. Graham*, 906 F.3d 955, 964 (11th Cir. 2018); *see also Turner-Pugh v. Monroe Cnty. Bd. of Educ.*, No. 1:23-00294-TFM-N, 2024 WL 4469209, at *6 (S.D. Ala. Aug. 16, 2024) ("[I]n federal courts, state-law immunities from suit are not jurisdictional matters, but are simply defenses that the proponent is required to raise and prove."), *report and recommendation adopted*, No. 1:23-CV-294-TFM-N, 2024 WL 4202720 (S.D. Ala. Sept. 16, 2024). Accordingly, the School Board's belated sovereign immunity defense fails to allege a defect in

---

[1] Florida's state-law based immunity from suits in its own courts is related but distinct from its sovereign immunity in federal court under the Eleventh Amendment. *See, e.g., Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990) (per curiam) ("Evidence that a state has waived sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court."). Had the School Board raised Eleventh Amendment immunity, that argument would have avoided Rule 12(g)(2) as a proper jurisdictional attack. *See Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024) ("Sovereign immunity [under the Eleventh Amendment] is inherently jurisdictional in nature."). But the School Board did not raise this specific immunity defense, and "unlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001).

this Court's subject matter jurisdiction and thus falls outside of the exception to Rule 12(g)(2) at the pleading stage.

Nonetheless, as explained below, I decline to exercise supplemental jurisdiction over this purely state law claim and dismiss it without prejudice. Given the view of Florida courts that sovereign immunity "can be raised at any time," *Robinson*, 364 So. 3d at 1091, and my position that "Florida's sovereign immunity presumably applies with equal force to the School Board, as a subdivision of the State," Order at 30 n.7, I anticipate that the School Board would be successful in re-raising this defense in any future state court proceedings.

### B. Subject Matter Jurisdiction

At this stage, all that remains in this action are Smith's state law unjust enrichment claims against Verra and the School Board. Verra argues that these claims, standing alone, do not provide a basis for this Court's jurisdiction because the parties are not completely diverse and because the amount in controversy is less than $75,000. *See* Verra Mot. at 4 n.1. Verra thus requests that I decline the continued exercise of supplemental jurisdiction. *See id.* at 1–6. Smith counters that the exercise of supplemental jurisdiction remains appropriate, and regardless, that the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), provides an independent jurisdictional basis. *See* Resp. to Verra Mot. (Doc. 60) at 1–2. I disagree with Smith on both points.

9

### 1. Class Action Fairness Act

Smith first asserts that "[t]he Court should not decline jurisdiction without first satisfying itself that CAFA's prerequisites are not met," suggesting that jurisdictional discovery might be necessary. Resp. to Verra Mot. at 3. But Smith misunderstands his burden at the pleading stage, and his belated attempt to invoke a never-alleged jurisdictional basis is unpersuasive. Ultimately, Smith fails to allege that CAFA's jurisdictional requirements are satisfied.

"CAFA grants federal district courts jurisdiction over class actions where (1) *any* member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)–(6)). At the pleading stage, "the jurisdictional burden of the party seeking a federal forum through CAFA is to show that the case stated in the complaint meets federal jurisdictional requirements." *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 849 (11th Cir. 2022) (per curiam) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010)). In making this assessment, "courts may use their judicial experience and common sense to determine if the case meets the federal jurisdictional requirements from the pleadings alone." *Id.* Class-action claims should be

"dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified." *See Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271 (11th Cir. 2016).

Smith's complaint—which never invokes CAFA—does not show that "the case stated" meets CAFA's amount in controversy requirement. To be sure, minimal diversity is likely satisfied. Smith is a citizen of Illinois, *see* Resp. to Verra Mot. at 3, the School Board is a citizen of Florida, and Verra is a Delaware corporation with its principal place of business in Arizona, *see* Compl. ¶¶ 6–8. Smith also alleges numerosity, claiming that the "class consists of at least thousands of individuals who received NOVs through the CrossingGuardSystem and paid the associated civil penalty." *Id.* ¶ 60. But Smith's complaint does not allege that the amount in controversy exceeds $5 million. At most, Smith's complaint alleges that the defendants' "school-bus 'safety' camera scheme . . . has already generated more than 11,400 citations in Polk County, generating more than $1.3 million in civil penalties." *Id.* ¶ 1; *see id.* ¶ 30. The School Board and Verra are entitled to 30% and 60% of the program's revenue, respectively. *Id.* ¶ 34.

Smith resists this formulation, arguing that the $1.3 million "does not represent the full universe of Class damages and is, on its own terms, only a partial accounting." Resp. to Verra Mot. at 4. First, Smith claims that the

11

amount in controversy must include not "only NOV-stage civil-penalty receivables at $225 per citation," but also escalated UTC-stage penalties of $329, as well as court costs and "follow-on fines of up to $500 imposed by hearing officers." *See id.* at 5. Second, Smith asserts that "the $1.3 million reflects revenue as of the August 27, 2025 filing date," whereas the class includes drivers fined through the present. *See id.* Finally, Smith urges that "[c]ommon sense readily supports a plausible aggregate above $5,000,000 here," where the revenue-sharing arrangement permitted Verra to operate "a county-wide enforcement program across roughly 510 school buses." *Id.*

Smith overlooks a few critical points. First, Smith's complaint never alleges the amount of additional UTC-stage penalties or court costs paid by the class members, let alone that they exceed $5 million. At $1.3 million in collected fines for 11,400 ticketed drivers, the defendants received approximately $114 per NOV, belying Smith's speculative claim that a meaningful number of class members paid "follow-on fines of up to $500 imposed by hearing officers." *See* Resp. to Verra Mot. at 5 (citing Compl. ¶ 39). And as Verra notes, even if each one of the 11,400 cited drivers paid the same $329 UTC-stage penalty that Smith did, the total amount at issue—as against all three defendants—would only be $3,750,600. *See* Reply (Doc. 62) at 5. Smith never attempts to bridge the gap to $5 million by quantifying harms apart from court costs and fees. Instead, he vaguely describes other harms as "improper

financial penalties and threatened deprivation of driving privileges without constitutionally sufficient process." Compl. ¶ 101. Second and relatedly, Verra and the School Board's potential liability on the remaining claims is even more limited because "[t]he measure of damages for unjust enrichment is the value of the benefit conferred, not the amount the plaintiff hoped to receive or the cost to the plaintiff." *F.H. Paschen, S.N. Nielsen & Assoc., LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 50 (Fla. 4th DCA 2021); *see* Reply (estimating an upper limit of approximately $780,000 in program receipts to Verra, all that would be recoverable against it in an unjust enrichment claim). Ultimately, Smith's insinuation that the defendants "operat[ed] a multi-million-dollar enforcement program" is not supported by the factual allegations in the complaint and does not place more than $5 million in controversy. *See* Resp. to Verra Mot. at 6.

Further, Smith's contention that the penalties, and thus the amount in controversy, "accrued through and after the filing date" is incorrect. *Id.* at 5. Rather, "a court should assess CAFA jurisdiction based on the time the operative pleading was filed."[2] *Pearce v. State Farm Fla. Ins. Co.*, No. 23-14081,

---

[2] Of course, this rule cuts both ways. "Post-filing events, including those that 'do away with the class claims,' do not destroy the court's jurisdiction over a case under CAFA." *Pearce*, 2026 WL 1078129, at *10 (quoting *Wright*, 841 F.3d at 1272). As explained above, however, even considering the complaint's now-dismissed class wide allegations against all defendants, the amount in controversy still does not satisfy the $5 million threshold. *See supra*, at 10–12.

13

2026 WL 1078129, at *10 (11th Cir. Apr. 21, 2026) (per curiam) (citing *Wright*, 841 F.3d at 1271–72). In any event, Smith's complaint acknowledges that "[i]n May 2025, the Florida Legislature enacted new legislation to finally provide a hearing mechanism for § 316.173 violations—the very safeguard Plaintiffs contend was previously missing." Compl. ¶ 45. Smith does not explain how damages continued to accrue after the legislative change. Simply put, Smith fails to allege the required amount in controversy, and I see no path for amendment to cure this deficiency.

Next, even were the amount in controversy satisfied, Verra argues in the alternative that Smith must contend with CAFA's home state and discretionary exceptions.[3] *See* 28 U.S.C. § 1332(d)(3)–(4). I explain briefly why each exception—which Verra bears the burden of proving by a preponderance of the evidence—might not apply.

Ordinarily, the home state exception applies, and a court must decline jurisdiction, if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). While it is

---

[3] To the extent that Verra also mentions the local controversy exception, Verra does not assert that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *See* 28 U.S.C. § 1332(d)(4)(A)(ii).

14

likely that at least two-thirds of the class members are Florida citizens and certain that one Florida defendant remains in the action, it is unclear whether Verra or the School Board qualify as "primary defendants." *See Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017) (explaining that "[t]he statutory language provides little guidance" on this term's meaning and concluding that, "at least where monetary relief is sought," the primary defendants "ha[ve] potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable"). Verra does not address this point in any detail.

For the same reasons, Verra fails to establish that the discretionary exception applies. Under this exception, a district court may only decline to exercise jurisdiction if it "find[s] two preliminary conditions are met: (1) greater than one-third but less than two-thirds of the aggregate members are citizens of the state in which the class action was originally filed; *and* (2) the primary defendants are citizens of the state in which the class action was originally filed." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1161 (11th Cir. 2021) (quoting 28 U.S.C. § 1332(d)(3)). Again, it remains unclear whether the remaining Florida defendant is a "primary defendant," and Smith does not provide evidence of the class members' citizenship. At this juncture, neither exception would provide a basis to decline jurisdiction, assuming it ever existed.

15

### 2. Supplemental Jurisdiction

Although CAFA does not provide the Court's subject matter jurisdiction, Smith and Verra disagree as to whether I should continue to exercise supplemental jurisdiction over Smith's remaining unjust enrichment claims. Upon review, the balance of relevant factors weighs against doing so, and I thus dismiss Smith's remaining claims without prejudice.

"In the ordinary course, where the federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline supplemental jurisdiction." *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022) (citing C*arnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)), *aff'd*, 124 F.4th 1273 (11th Cir. 2024). Before doing so, "courts engage in a two-step process: first, the district court must confirm that it has discretion to decline under § 1367(c); and second, it must consider whether prudential factors counsel against dismissal." *Id.*

Here, I may decline supplemental jurisdiction because I "dismissed all claims over which [the Court had] original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

Next, I must consider whether "judicial economy, convenience, fairness, and comity" counsel against dismissing the remaining state counterclaims.

16

*Ameritox, Ltd. v. Millennium Lab'y, Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) (citation modified); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In general, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). That is "particularly the case where . . . the dismissal occurs without any analysis of the merits of the state claims." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). The general rule remains true even if "the Court has overseen pretrial litigation and extensive discovery." *Stalley*, 586 F. Supp. 3d at 1249.

As in the usual case, judicial economy, convenience, fairness, and comity support declining the exercise of supplemental jurisdiction.

On judicial economy, all federal claims have been dismissed at the pleading stage without the Court "expend[ing] unnecessary resources that will need to be repeated in state court." *Austin v. Metro Dev. Grp., LLC*, 571 F. Supp. 3d 1279, 1295 (M.D. Fla. 2021). While my partial dismissal order contains some "analysis of the merits of the state law claims," *Vibe Micro*, 878 F.3d at 1296, such analysis reached the limited conclusion that (based on the arguments raised) Smith's unjust enrichment claims against Verra and the School Board survived Federal Rule of Civil Procedure 12(b)(6). *See* Order at

31–35. Most of the work remains, as Smith is sure to seek discovery, and the parties may move for summary judgment on the claims in the future.

Next, convenience to the parties favors declining jurisdiction. Although Smith does not reside in Florida, it appears likely that most of the class members do. Smith can thus refile in state court in Polk County, which "will be a more central—and thus convenient—location to gather the evidence, parties, attorneys, and witnesses for trial." *Stalley*, 586 F. Supp. 3d at 1250.

Dismissal here also will not create unfairness to the litigants. "[E]very litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." *Ameritox*, 803 F.3d at 539. Smith is no different, as he never raised CAFA as an alternative basis for jurisdiction over his state law claims. Further, as explained, neither the Court nor the parties have yet expended significant resources preparing for trial, with the discovery deadline six months away. *See* (Doc. 36). To the extent that the parties have engaged in any preliminary, pre-class certification discovery, those efforts should help drive an expedient resolution in state court.

Finally, comity strongly weighs in favor of dismissing Smith's state law unjust enrichment claims. *See* Order at 34–35. Comity is "served when issues of state law are resolved by state courts," *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002), which "should be the final arbiters of state law," *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir.

18

1997). Smith's remaining state law claims implicate a potentially unresolved distinction between "unjust" and "wrongful" enrichment. *See* Order at 34–35. Comity demands that Florida courts be permitted to adjudicate that issue.

## IV.    CONCLUSION

After review, I exercise discretion to revise my previous interlocutory order under Rule 54(b). Although Rule 12(g)(2) precludes the School Board from raising state law sovereign immunity, Verra persuades that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims, for which CAFA does not independently provide jurisdiction. Accordingly, it is **ORDERED:**

1. The School Board of Polk County's Motion for Revision of Interlocutory Order (Doc. 55) is **DENIED**.

2. Verra Mobility Corporation's Motion for Reconsideration (Doc. 57) is **GRANTED.** Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE** as against Verra Mobility Corporation.

3. Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE** as against the School Board.

4. The clerk is directed to enter **JUDGMENT** which shall read, "This case is dismissed. Counts I, II, and IV are dismissed with prejudice as against Verra Mobility Corporation, the School Board of Polk County, and the Polk County Sheriff's Office. Count III is dismissed with prejudice as

against the Sheriff's Office, and without prejudice as against the School Board and Verra. Count V is dismissed with prejudice as against Verra."

5. The Clerk is further directed to **TERMINATE** any pending deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on June 10, 2026.


_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge

20